UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

    SAMUEL MICHAEL FODALE,

        Debtor.
_____/

Case No. 10-69502
Chapter 7
Hon. Walter Shapero

GIANNETTI CONTRACTING CORP.,

        Plaintiff,

v.

SAMUEL MICHAEL FODALE,

        Defendant.
_____/

Adv. Pro. No. 10-07510

## OPINION DENYING MOTION FOR SUMMARY JUDGMENT (Docket No. 26)

Before the Court is a motion for summary judgment in an action under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(11). For the reasoning that follows, the motion is denied.

## Facts

This matter arises out of two construction projects in Michigan. Defendant Samuel Fodale ("Fodale") is or was, at all relevant times, an officer, member, manager and/or person in control of Fodale Group, LLC ("FG"). FG was the general contractor on two separate construction improvement projects -- TDS-US Project in Warren, Michigan and the Metropolitan Parkway Warehouse Project in Sterling Heights, Michigan -- on which Plaintiff Giannetti Contracting Corporation ("Giannetti") provided excavation and underground site work.

On March 20, 2006, Giannetti and FG entered into a contract whereby Giannetti agreed to provide the above stated services on a time and material basis for the TDS-US Project. It is undisputed that Giannetti completed the contract work and that the total amount owed to Giannetti on this project is $50,670.63. Further, there is no challenge to Giannetti's claim that it did not receive payment.

On October 13, 2006, Giannetti and FG entered into another contract in the amount of $883,200, which was later modified to $908,789, whereby Giannetti agreed to provide its services for the Metropolitan Parkway Warehouse Project. It is also undisputed that Giannetti completed the contract work and that FG owed it $908,789 for this second project. FG has paid $795,150 to Giannetti leaving a balance of $113,639 on the Metropolitan Parkway Warehouse Project. On June 8, 2007, Fodale presented Giannetti with a check in the amount of $113,639 in exchange for a full unconditional waiver of Giannetti's construction lien. The check, however, was dishonored for non-sufficient funds and Giannetti's waiver caused it to lose its secured interest as a construction lien claimant. The claimed amount owing to Giannetti for both of the projects is $164,309.63.

On May 8, 2008, Giannetti filed a lawsuit against Fodale and FG in the Macomb County Circuit Court (Case No. 2008-2041-CK) concerning the TDS-US Project and alleging six counts against FG: (1) breach of contract/account stated, (2) unjust enrichment, (3) fraud, (4) misrepresentation, (5) violation of the Michigan Builder's Contract Fund Act, and (6) conversion; and four counts against Fodale: (1) fraud, (2) misrepresentation, (3) violation of the Michigan Builder's Contract Fund Act, and (4) conversion. On May 9, 2008, Giannetti filed a second lawsuit against Fodale and FG in the Macomb County Circuit Court (Case No. 2008-2049-CK) concerning

the Metropolitan Parkway Warehouse Project, alleging the same exact counts as it alleged in the first lawsuit.

Subsequently, the parties came to an agreement. On December 3, 2008, despite failing to execute any settlement documents, the parties appeared before the Honorable David F. Viviano of the Macomb County Circuit Court to place the terms of their agreement on the record. The relevant terms of the agreement are as follows: (1) Fodale or FG will pay $140,000 to Giannetti -- the settlement was for $150,000, but an initial payment of $10,000 was already paid; (2) the $140,000 will be paid in installment payments of $10,000 per month; (3) in the event of a default, past the seven-day cure period, the amount owed will increase to $164,000 less amounts paid; and (4) the parties have 21 days to execute the settlement documents and enter an order of dismissal of the two cases, Case Nos. 2008-2041-CK and 2008-2049-CK. (Transcript of hearing on Dec. 3, 2008.) As noted, Fodale and FG, made an initial payment of $10,000, but thereafter failed to make the installment payments and refused to execute a written settlement agreement encompassing the settlement that was placed on the record.

On March 9, 2009, Giannetti filed a motion to enforce the settlement agreement and to enter a judgment against Fodale and FG. On March 23, 2009, a hearing was held and the Macomb County Circuit Court entered an order granting Giannetti's motion to enforce the settlement agreement. The court entered a judgment against Defendants for $144,000.00, which "represents the accelerated amount of $164,000.00 owed to Giannetti pursuant to the Settlement Agreement, less $20,000.00 of payments made by Defendants pursuant to the Settlement Agreement."

Fodale filed his chapter 7 bankruptcy petition on September 23, 2010, and this adversary proceeding was timely filed on December 10, 2010. Giannetti brings this motion for a summary

3

10-07510-wsd    Doc 50    Filed 02/23/12    Entered 02/23/12 09:39:37    Page 3 of 8

judgment denying the discharge of Fodale's $144,000 judgment debt to Giannetti, contending that Fodale's debt was reduced to a judgment and that both the debt and the judgment are based on allegations of fraud arising from Fodale's repeated false representations of payment and his inducement to have Giannetti sign a full and unconditional waiver in exchange for a check that was written upon insufficient funds. Consequently, Giannetti contends that collateral estoppel precludes this Court from itself determining those issues. Fodale argues that collateral estoppel does not preclude this Court from determining the issue of fraud or other substantive issues, because there was never any finding of fraud and the parties' settlement agreement expressly provides that there is no admission of liability or wrongdoing. Accordingly, the Court must determine whether collateral estoppel applies here.

## **Discussion**

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56. Under Rule 56(a), summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). However, the nonmoving party may not rely on mere allegations or denials but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are

4

"genuinely disputed." Fed.R.Civ.P. 56(c)(1). "[T]he mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (internal quotation marks and citation omitted).

Here, the moving party is Giannetti, and the foundation for its motion is the Michigan state court judgment and the averred collateral estoppel effect arising therefrom. "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted). In *Livingston v. Transnation Title Insurance Co.* (*In re Livingston*), 372 Fed. Appx. 613, 617 (6th Cir. 2010) (citations omitted), the Sixth Circuit Court of Appeals confirmed that principles of collateral estoppel apply in nondischargeability actions. *See also Grogan v. Garner*, 498 U.S. 279, 285 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). In *Livingston*, 372 Fed. Appx. at 617, the Sixth Circuit followed another bankruptcy court in this district in looking to Michigan law to determine whether a Michigan state court judgment has a preclusive effect. *See also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the [s]tate in which the judgment was rendered.")

Given the sequence of recited events in the state court leading to the hearing on March 23, 2009, the judgment in the present case is "in essence," and must be treated as the functional equivalent of, a consent judgment. *See generally Morrison v. Carmona* (*In re Carmona*), 424 B.R. 227, 232 (E.D. Mich. 2010) (holding that a judgment entered pursuant to a case evaluation

5

is "in essence" a consent judgment). It arose from a settlement agreement, some payments under which were made, and became embodied in a judgment rendered in the context of enforcing that settlement agreement and as a result of defaults thereunder. Under Michigan law, consent judgments are not generally given collateral estoppel effect. *Am. Mut. Liability Ins. Co. v. Mich. Mut. Liability Co.*, 235 N.W.2d 769, 776 (Mich. Ct. App. 1975); *accord Kohlenberg v. Baumhaft (In re Baumhaft)*, 271 B.R. 517, 521 (Bankr. E.D. Mich. 2001) (J. Rhodes) (citations omitted). Because "a consent judgment reflects primarily the agreement of the parties[,]" by signing the judgment, the trial judge "merely put[s] his stamp of approval on the parties' agreement disposing of those matters." *Am. Mut. Liability Ins.*, 235 N.W.2d at 776. Thus, "the issues involved in the settled case [are] not actually adjudicated[.]" *Id.* Accordingly, consent judgments normally fail to meet the legal requirements of collateral estoppel. *Id.*

Persuasive policy reasons underlie that general rule. "The social interest in reducing instances of costly litigation is undermined by a rule which provides drastic consequences for settlements." *Id.* at 776-77. Parties are less willing to enter into settlement agreements if such agreements could have drastic, far reaching and unforeseeable consequences. *Id.* at 777. Further, by not recognizing a collateral estoppel effect, there is no threat to the legitimate expectations of repose, as parties to consent judgments do not bargain for such protection. *Id.* Moreover, judicial consistency is not disturbed since judges are not deciding issue underlying consent judgments. *Id.*

The United States Supreme Court in *Archer v. Warner*, 538 U.S. 314, 322 (2003), also recognized that settlement agreements ordinarily are not given collateral estoppel effect. *Archer* dealt with a similar factual situation. There, the case arose out of circumstances of which the Supreme Court outlined:

6

> (1) *A* sues *B* seeking money that (*A* says) *B* obtained through fraud; (2) the parties settle the lawsuit and release related claims; (3) the settlement agreement does not resolve the issue of fraud, but provides that *B* will pay *A* a fixed sum; (4) *B* does not pay the fixed sum; (5) *B* enters bankruptcy; and (6) *A* claims that *B'*s obligation to pay the fixed settlement sum is nondischargeable because, like the original debt, it is for "money . . . obtained by . . . fraud."

*Archer*, 538 U.S. at 316-17. While not deciding the collateral estoppel issue, the Supreme Court noted that "settlements ordinarily occasion no issue preclusion . . . unless it is clear . . . that the parties intend their agreement to have such an effect." *Id.* at 322 (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000)).

There is an exception to the general rule of not giving consent judgments a collateral estoppel effect, however, and that is where "the parties have entered an agreement manifesting an intention that the judgment be conclusive with respect to one or more of the issues." *Baumhaft*, 271 B.R. at 521 (internal quotation and citations omitted). An exception to the rule came to light in the case of *Baumhaft*. There, another bankruptcy court in this district also needed to discern whether a consent judgment deriving from a Michigan state court could have a collateral estoppel effect in nondischargeability proceedings. *Id.* at 522-23. In that circumstance, the state court entered a consent judgment based upon a settlement agreement, which in turn incorporated a stipulation of facts. *Id*. at 522-23. The combination thereof manifested an intention of the parties to be bound by the stipulated facts, and those agreed-upon facts necessarily satisfied the nondischargeability elements at-issue. *Id*. Accordingly, the court recognized a collateral estoppel effect arising from the limited circumstance of that particular consent judgment.

So, unlike in *Baumhalf,* the judgment incorporating the agreement here neither provides an intention of the parties that the judgment be conclusive to nondischargeability issues, nor does it

7

begin to resolve any issues of fact upon which this Court can rely. To the contrary, the settlement agreement presented here strictly expresses the terms of payment, orders the parties to execute settlement documents, and provides the consequences of default. Neither the settlement agreement nor the order of default discuss the substantive issues before the Court, including those relating to fraud.[1] Based on these circumstances, the exception to the general rule does not apply.

## **Conclusion**

For the foregoing reasons, Giannetti's motion for summary judgment is denied. The Court is concurrently entering an order to that effect.


**Signed on February 23, 2012**

                                                                          **/s/ Walter Shapero**
                                                       **Walter Shapero**
                                                       **United States Bankruptcy Judge**

---

[1] Fodale, in addition, argues that the parties' settlement agreement contains two provisions, which expressly provide that there is no admission of liability or wrongdoing. The Court does not base its conclusion thereon, as Fodale failed to provide the Court with the whole agreement. If, however, the agreement contains such provisions, they would only reinforce the Court's conclusion that collateral estoppel does not apply.